UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIESEL SPECIALISTS, LLC | CIVIL ACTION |
| VERSUS | NO. 09-2843 |
| M/V MOHAWK TRAVELER, *in rem*, and<br>MOHAWK TRANSPORTATION, LLC and<br>FITCH TRANSPORTATION, INC., *in personam* | SECTION "N" (5) |

## **O R D E R  &  R E A S O N S**

Before the Court is the **Motion to Vacate Attachment (Rec. Doc. 15)** brought by the *in personam* Defendants and regarding the *in rem* Defendant, the M/V MOHAWK TRAVELER. The motion is opposed. After reviewing the original and supplemental memoranda, the complaint, and the applicable law, the motion is denied as stated herein.

### I. BACKGROUND

Defendant Fitch Transportation, Inc. ("Fitch") operates a number of vessels owned by Mohawk Transportation, LLC ("Mohawk"). On October 16, 2008, Fitch purchased two used vessel engines from D&S Marine Services, LLC, which purchase was paid with two checks, Nos. 1532 and 1533, each issued in the amount of $9,999.00 on the same date. *See* Mot. at Ex. A (Fitch checks). Diesel Specialists, LLC ("Diesel") was hired to repair one of these engines, and it undisputed that this engine was eventually placed in the M/V MOHAWK TRAVELER.

However, there is a sharp factual dispute as to whether this engine was specifically purchased for use in the vessel or merely as spare parts, to be used as needed for vessels in the Mohawk fleet. There is also a dispute as to whether the repairs Diesel made to the engine were completed.

Mohawk argues that the attachment must be vacated since, because the engine in question was not specifically purchased or repaired for use in the vessel, Diesel did not provide necessaries or services "to" the M/V MOHAWK TRAVELER within the meaning of the relevant Rule. *See* 46 U.S.C. § 31342; *see also Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 10-11 (1920) (coal delivered to company and later loaded onto vessels not provided "to" vessels); *Racal Survey U.S.A., Inc. v. M/V COUNT FLEET*, 231 F.3d 183, 190-91 (5th Cir. 2000) (seismic equipment sold or leased to vessel charterer and later placed aboard vessels not service "to" vessels). In the alternative, Mohawk argues that the attachment is premature and consequently waived since the vessel was attached prior to Diesel's invoice coming due.

## II. ANALYSIS

"[A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner" has a maritime lien on that vessel and may bring an *in rem* action to enforce the lien. 46 U.S.C. § 31342. Where a party seeks to vacate the arrest and attachment of a vessel, the burden is on the arresting party to show "reasonable grounds" for the arrest. *See Torch Offshore, L.L.C. v. M/V MIDNIGHT HUNTER*, 2003 WL 21181467 (E.D. La. May 19, 2003); *In re Murmansk Shipping Co.*, 2001 WL 699530, at * 2 (E.D. La. Jun. 18, 2001); *see also* Fed. R. Civ. P. Supplemental Rule E(4)(f) (providing that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the

plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."). Thus, the attaching party must present sufficient evidence to show probable cause for the attachment. *See Continental Ins. Co. v. Adriatic Tankers Shipping Co.*, 1995 WL 649942,*1 (E.D. La.1995). When considering a motion to vacate, the Court need not definitively resolve the dispute between the parties, but instead it must only determine whether there are reasonable grounds for issuing the order. *See Cashman Equipment Corp. v. Trans Caribbean Trans. Co., Ltd.*, 1996 WL 626294,*2 (E.D. La. 1996).

The Court concludes that Diesel has carried its burden of showing probable cause for the attachment. To begin with, it is important to note that as regards the reasonableness of Diesel's attachment, the question of whether a service was provided "to" the M/V MOHAWK TRAVELER within the meaning of the Rule turns on what Mohawk's intent was when it contracted for the engine's *repair*, not its intent when it *purchased* the engine. Diesel has submitted the declaration of Whittington Kellam, Diesel's manager, who declares that Diesel was approached about repairing the engine in question specifically for use in the M/V MOHAWK TRAVELER and that Mohawk called Diesel several times during the repair process to express its anxiety that the engine be repaired quickly so that the vessel could return to service. *See* Opp. at Ex. A (Kellam declaration). Mohawk counters this evidence with the affidavit of Larry Paul Fitch, president of Fitch and owner of Mohawk, who declares that he delivered the engine to Diesel for repair in November 2008 but that the existing engine in the M/V MOHAWK TRAVELER did not burn out and require replacement until "late 2008 or early 2009." See Mot. at Ex. A (Fitch affidavit).

The Court further notes that these two pieces of testimony may not be entirely in conflict

with each other, since a reasonable factfinder could conclude that November 2008 is "late 2008," that the M/V MOHAWK TRAVELER's engine burned out in November, and that the new engine was delivered at that time for repair and eventual use in the vessel. A reasonable factfinder could also conclude that Mohawk delivered the new engine to Diesel prior to the blowout but with the specific intent of repairing it for use in the M/V MOHAWK TRAVELER, as a replacement for an engine showing signs of possible imminent breakdown. In any event, even if these two pieces of testimony are in conflict, resolving them would require resolving factual disputes, which is not the Court's task on a motion to vacate.

Moreover, there is additional strong evidence for the reasonableness of the attachment. In its motion, Mohawk attaches as an exhibit the two checks that it used to pay for the engines, one of which was eventually installed in the M/V MOHAWK TRAVELER. In the "FOR" section of one of those checks, No. 1532, is written the notation, "M/V Mohawk Traveler." *See* Mot. at Ex. A (Fitch checks). This strongly suggests that even at the time the engines were purchased, Fitch intended to use one of them in the vessel. From this evidence it is reasonable to infer that the company likewise delivered the engine for repair with the intent to use it in the vessel. Thus, there is substantial evidence supporting the conclusion that the engine repairs were services "to" the M/V MOHAWK TRAVELER within the meaning of the relevant Rule, and that the attachment was thus reasonable.

Mohawk argues in the alternative that the attachment is premature because the invoice clearly shows payment terms of 30 days from "purchase," and argues that "purchase" has not been completed because the engine was not delivered to Mohawk in good working order. Diesel denies that the engines were delivered in less than working order and also argues that Mohawk

has misstated the terms of payment. The Court notes that even if it were inclined to interpret the word "purchase" in the manner suggested by Mohawk, this would simply implicate a factual dispute regarding the completeness of the repairs that is not resolvable on a motion to vacate. But the Court pretermits this entire argument on the simple grounds that Mohawk attempted to tender payment for Diesel's services by issuing a check on January 16, 2009, and then again on February 2, 2009, both of these checks being returned for insufficient funds. *See* Opp. at Exs. B, C. This is compelling evidence that the work was completed to Mohawk's satisfaction and that the attachment is not premature.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Vacate Attachment is **DENIED**. Mohawk may move to set a security bond to release the vessel.

New Orleans, Louisiana, this 17th day of April, 2009.

**KURT D. ENGELHARDT**
**United States District Judge**